IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DAVID RIVERA,

                           Plaintiff,

          vs.                                        Civil Action No.
                                                     02-CV-1585 (TJM/DEP)

JO ANNE B. BARNHART, Commissioner
of Social Security,

                           Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

IRWIN M. PORTNOY LAW FIRM             IRWIN M. PORTNOY, ESQ.
254 Route 17K
Newburgh, NY 12550

FOR DEFENDANT:

HON. GLENN T. SUDDABY                 WILLIAM H. PEASE, ESQ.
United States Attorney for the        Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL             BARBARA L. SPIVAK, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                    PETER S. KRYNSKI, ESQ.
                                      Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff David Rivera, who suffers from a variety of mental and physical conditions including, *inter alia*, a degenerative lumbar disc condition causing back pain which radiates into both thighs; anxiety and depression; seizures; stomach ulcers;[1] and asthma, has commenced this proceeding seeking judicial review of an administrative determination that he was not disabled at the relevant times, and thus denying his application for disability insurance benefits under the Social Security Act.  In support of his challenge of that determination, plaintiff asserts that the administrative law judge ("ALJ") hearing the matter failed to properly evaluate medical evidence in the record, including from his treating physicians, and overstated Rivera's residual functional capacity ("RFC") in light of his exertional and nonexertional limitations.  Plaintiff also argues that the ALJ improperly assessed his credibility, rejecting Rivera's

---

[1]     While plaintiff's stomach condition has sometimes been referred to using the term "ulcers", he identifies it as a condition known as hemangioma, described in one authoritative medical source as a general term denoting a benign or malignant vascular tumor composed of capillaries or blood vessels.  Dorland's Illustrated Medical Dictionary 795 (29th ed. 2000).  According to the plaintiff, that condition has been well controlled through the use of medication, including Zantac and Pepcid.  AT 749-50.

subjective testimony regarding his limitations, and erred in relying upon the medical-vocational guidelines set forth in the governing regulations (the "grid"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, arguing that in order to carry the Commissioner's burden of proving the existence of available work capable of being performed by the plaintiff, the ALJ should have elicited expert vocational testimony on that issue.

Having reviewed the record carefully, in light of plaintiff's arguments, I find that the ALJ's rejection of plaintiff's subjective testimony regarding his limitations is not adequately explained and supported as required under the applicable regulations, and further that in applying the grid the ALJ failed to take into consideration certain nonexertional limitations significantly restricting plaintiff's ability to perform a full range of light work, therefore requiring that expert vocational testimony be adduced to address the availability of jobs capable of being performed by him. Accordingly, I recommend that the Commissioner's determination be reversed, and the matter remanded for further proceedings consistent with this opinion.

I.      BACKGROUND

Plaintiff was born on March 12, 1954; at the time of the

administrative hearing in this matter, he was forty-three years old.

Administrative Transcript at pp. 269, 742.[2]  Plaintiff reports having been

raised by his mother in New York City, after relocating there from Puerto

Rico at the age of five.  AT 185.  Plaintiff has an eleventh grade

education.  AT 742-43.  Although the issue was not addressed at the

hearing, it appears that at least as of 1984 plaintiff had six children.  AT

185.

Plaintiff was last employed between 1988 and 1992 by the United

States Postal Service as a maintenance worker.  AT 743.  Although it

coincides with the date of his motor vehicle accident in March of 1992,

Rivera attributes his leaving that position principally to emotional stress

associated with "a supervisor that kept always getting in [his] face, giving

[him] a hard time."  AT 744.

Plaintiff was involved in an automobile accident on March 17, 1992.

AT 503-04, 640.  In a questionnaire completed for an insurance carrier

plaintiff reported experiencing various symptoms as a result of the

accident, including headaches, neck pain, nervousness, dizziness,

---

[2]      Portions of the administrative transcript and supplemental transcript of proceedings before the agency, Dkt. Nos. 7, 8, which were filed by the Commissioner will be cited in this decision as "AT ___."

sleeping problems, back pain, tension and chest pain.  AT 503.  X-rays

taken on March 19, 1992 reflected no evidence of any fracture or

subluxation of the vertebrae, with disc spaces maintained and neural

foramina patent.  AT 637.  Magnetic resonance imaging ("MRI") testing

performed on December 16, 1992 revealed a mild disc degeneration at

L5-S1.  AT 497.

Plaintiff sought continuing medical and chiropractic treatment

following his accident.  Rivera was referred to Dr. Venkatesha Reddy, a

neurosurgeon, who examined him on March 26, 1992.  AT 640-41.  Based

upon that examination, Dr. Reddy diagnosed plaintiff as suffering from

"features of cervical and thoraco-lumbar strain without any features of

radiculopathy" and recommended physical therapy and the use of

analgesics to control pain.  *Id.*  In light of the persistence of pain, plaintiff

continued to treat with Dr. Reddy, who on April 23, 1992 discussed with

Rivera the possibility of returning to a light duty job within one or two

weeks – something to which plaintiff was agreeable.  AT 643.  During the

course of treating the plaintiff, Dr. Reddy also addressed his complaints of

headaches, on July 16, 1992 indicating significant improvement in that

area, although noting persistent discomfort in Rivera's neck and low back

region, for which he continued to receive chiropractic treatments.  AT 644.

At that point Dr. Reddy indicated that insofar as the headaches were

concerned, plaintiff's progress was satisfactory and he would be seen on

only an as needed basis.  *Id.*

Plaintiff also underwent chiropractic treatment for neck and low back

pain, having been diagnosed by a provider in January of 1993 as suffering

from cervical subluxation: sprain/strain; thoracic subluxation; sprain/strain;

and cervicalgia: headache, resulting in low back pain and burning in the

right leg.  AT 500-01.  Plaintiff's chiropractor projected "[f]urther subjective

and objective improvements in the patient[']s condition" and an anticipated

return to work in March of 1993.  AT 500-01.

As a result of injuries caused by the automobile accident, plaintiff

also received physical therapy three times weekly, beginning on March 26,

1992, with a reported increase in relief following those treatments.  AT

219.  Plaintiff, who additionally sought relief through swimming at a local

health club, was discharged from therapy in or about June of 1992.  *Id.*

Physically, plaintiff has reported experiencing ongoing back and leg

pain, which he describes as a burning sensation in the front of his thighs.

AT 750-51.  At the time of the hearing in 1997, plaintiff was relegated to

using a cane occasionally, and a wheelchair, prescribed for him by the

Veterans Administration ("VA") in 1997, primarily.  AT 745-46.  Most

recently, plaintiff has attempted to address his back and leg pain through

acupuncture.  AT 751.

Plaintiff testified during the hearing that he is able to sit for only

approximately one hour at a time as a result of his lower back pain, and is

required to use a cane when walking.  AT 752-53.  Plaintiff also has

difficulty standing, estimating that he is only able to do so for

approximately one half-hour at a time, again due to the effects of his leg

and back pain.  AT 755.  Plaintiff further testified that he is unable to lift

more than one pound.  AT 756-57.

In addition to his back condition, plaintiff also experiences asthma,

which is treated through the use of a Proventil pump.  AT 752.  According

to one notation in his VA records, dated February 27, 1992, Rivera "is an

asthmatic with hyperactive airways" and "should avoid dust, which will

trigger his asthmatic episodes."  AT 631.

Plaintiff also reports experiencing seizures, causing him to pass out

without any warning other than experiencing the smell of asbestos

immediately prior to an episode.  AT 759-61.  This condition, which

plaintiff describes as temporal lobe seizures, has been addressed through the use of medication, including Dilantin and Tegretol, which he began taking approximately two years prior to the hearing.  AT 760.

In addition to receiving treatment from the VA and other health care providers for his various conditions, plaintiff has been consultatively examined, both physically and mentally, by several professionals.  Rivera was examined relative to his physical complaints by Dr. Pamela C. Pedersen on September 15, 1993.  AT 227-29.  Speaking to Rivera's complaint of asthma, Dr. Pedersen reported that he experienced a mild obstructive defect, and that his symptoms were controlled though the use of inhaled bronchodilators and cromolyn sodium.  AT 229.  With respect to plaintiff's back pain, Dr. Pedersen observed some evidence of nerve root irritation and discrepancy in deep tendon reflexes, but noted that Rivera was "poorly cooperative" with range of motion and found no neurological deficits.  *Id.*

Plaintiff was later examined on June 28, 1996 by Dr. Ronald Bagner. AT 476-78.  Based upon his examination, Dr. Bagner found the existence of pain and limitation of motion in both the cervical and lumbar regions, but with no atrophy or sensory abnormalities or abnormal reflexes.  AT

478.  Dr. Bagner recorded his impression as cervical sprain/strain and lumbosacral strain.  *Id.*

Plaintiff was psychiatrically examined on September 8, 1993 by Dr. Roger M. Baretz, another agency consultant.  AT 225-26.  Dr. Baretz's examination was limited, consisting principally of listening to and assessing plaintiff's description of his psychological problems.  *Id.*  In his report, Dr. Baretz expressed disappointment that objective information had not been provided to him for use in formulating his opinions.  AT 225.  Based upon his examination, Dr. Baretz rendered an Axis I diagnosis of adjustment disorder with mixed emotional features, and added, based upon plaintiff's recounting of his experiences and diagnoses, an Axis III diagnosis of "[p]ossible temporal lobe epilepsy (by history)."  AT 226.  Significantly, Dr. Baretz concluded that "from a psychiatric point of view, [plaintiff's] personal, social and occupational functioning are impaired on a mild level only" and opined that he was able to perform at least "some degree of work-related activity."  *Id.*

An RFC assessment was completed by an agency consultant, Dr. Anthony J. Armentano, on October 18, 1993.  AT 93-100.  In that evaluation Dr. Armentano opined that plaintiff is able to carry ten pounds

frequently and twenty pounds on occasion; can stand and/or walk for about six hours out of an eight hour workday; and is capable of sitting for six hours in an eight hour workday.  AT 94.  The RFC assessment showed that plaintiff is not otherwise significantly limited by his physical condition other than noting that he should avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation, and even moderate exposure to hazards.  AT 97.

A work capacity evaluation, addressing plaintiff's physical limitations, was completed on December 30, 1997 by Dr. Han Ki Sim, a VA physician. AT 486-91.  In that evaluation, which is said to be based on treatment rendered between October 27, 1997 and the date of the report, Dr. Sim concluded that plaintiff suffers from right L5-S1 and left L5 radiculopathy and seizure disorder by history, as well as neurosis, anxiety-depression, post-traumatic stress disorder ("PTSD") and a duodenal ulcer by history. AT 486.  Dr. Sim opined that at any one time plaintiff can stand for only thirty minutes, sit for up to an hour, and walk for five minutes, and in an eight hour work day is capable of sitting only for two hours, standing thirty minutes, and walking ten minutes.  AT 488.  Dr. Sim also reports that plaintiff is capable of lifting only up to five pounds occasionally, and shows

many other limitations, including, significantly, that he should avoid all

exposure to dust, fumes, gases, noise, wetness, vibration, moving

machinery and unprotected heights.  AT 489-90.  Dr. Sim further opined

that plaintiff is unable to crawl, twist, squat/crouch, bend/stoop, climb

stairs or climb ladders.  AT 490.

On January 22, 1998 a VA psychologist, Dr. William Hartwig, issued

a letter, at plaintiff's request, in support of his disability claim.  AT 552-53.

Based upon a recently completed Minnesota Multiphasic Personality

Inventory 2 ("MMPI-II") test, Dr. Hartwig diagnosed plaintiff as suffering

from PTSD - chronic, and indicated "[i]t currently appears that he will be

involved in treatment for an extended period of time."  AT 553.

II.   PROCEDURAL HISTORY

A.   Proceedings Before The Agency

Plaintiff filed an application with the agency for disability insurance

benefits under the Act on July 16, 1993, alleging a disability onset date of

March 13, 1992.  AT 75-78.  Plaintiff's application was denied on

November 3, 1993, and plaintiff did not request a hearing in connection

with that denial.  AT 79, 101-03.  Plaintiff filed another application for

disability insurance benefits under the Act on April 11, 1996, again

asserting a disability onset date of March 13, 1992.  AT 269-72.  That

application was denied, both initially and on reconsideration.  AT 230, 232.

At plaintiff's request, a hearing was conducted on December 2, 1997

by ALJ Neil R. Ross to address the denial of plaintiff's April 11, 1996

application.  *See* AT 738-62.  At that hearing ALJ Ross also considered

whether to reopen the November 3, 1993 determination denying Rivera's

July 16, 1993 application for benefits.[3]  AT 28.

Following the close of the hearing, ALJ Ross issued a decision

dated April 26, 1999 upholding the denial of benefits.  AT 27-34.  In his

decision, the ALJ noted that plaintiff's insured status expired on December

31, 1996, and that accordingly the relevant inquiry was whether Rivera

was disabled within the meaning of the Act at any time on or prior to that

date.  AT 28.

After reviewing the evidence in the record, including medical reports,

ALJ Ross seemingly applied the familiar five step disability test prescribed

---

[3]     At the hearing the ALJ originally contemplated a reopening and
readjudication of a prior application, filed by plaintiff on May 11, 1984 but denied both
initially and on reconsideration, in light of a settlement agreement reached in
*Stieberger v. Sullivan*, 792 F.Supp. 1376, *amended*, 801 F.Supp. 1079 (S.D.N.Y.
1992), a class action suit brought in the Southern District of New York.  AT 27.  At the
hearing, however, plaintiff's counsel advised that Rivera was not pursuing the earlier
filed claim.  AT 28.

in the regulations and under the relevant case law, although there is little analysis offered regarding the plaintiff's impairments and whether they meet or equal any of the listings of presumptively disabling conditions prescribed in the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.[4]  *See* AT 32-33.  The ALJ concluded that at the relevant times plaintiff was incapable of performing heavy lifting or strenuous physical exertion, and that he could not return to his past relevant work as a maintenance worker, but found nothing in the record to preclude his performance of light work "from an exertional standpoint."[5]  AT 31, 35.  In making that

---

[4]      In his brief, plaintiff complains of the ALJ's failure to consider whether he suffered, at the relevant times, from one or more presumptively disabling conditions set forth in those regulatory listings.  *See* Plaintiff's Brief (Dkt. No. 12) at 21-22. Unfortunately, in making that argument plaintiff does not point to any specific listing which, in his view, is met or equaled based upon the evidence contained within the record.

[5]      Light work is defined by regulations as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors

finding the ALJ considered, but rejected as not credible, plaintiff's subjective testimony concerning pain and the limitations experienced by him as the result of his various conditions.  AT 31.  The ALJ then proceeded at step five of the analysis to conclude that application of the light work finding and other relevant characteristics associated with Rivera to the grid yields a finding of no disability.  AT 32.

In arriving at his determination, the ALJ noted the existence of nonexertional limitations stemming from the plaintiff's anxiety and depression as well as his history of asthma, finding that Rivera should not perform work which involves "exposure to dust, fumes, or excessive pulmonary irritants".  *Id.*  The ALJ concluded, however, that those nonexertional limitations did not significantly erode plaintiff's available occupational base between the period of March 13, 1992 and December 31, 1996 – the expiration of his insured status.  *Id.*  The ALJ thus found no basis not to apply the grid as a "framework" for making his step five assessment.  *Id.*

B.    Proceedings Before This Court

---

such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

-14-

Plaintiff commenced this action on December 23, 2003.  Dkt. No. 1.

Issue was thereafter joined by the Commissioner's filing of an answer,

accompanied by an administrative transcript and supplemental transcript

of the proceedings before the agency, on September 16, 2003.[6]  Dkt. Nos.

6-8.  With the filing of briefs on behalf of the plaintiff on February 11, 2004,

Dkt. No. 12, and the Commissioner on March 25, 2004, Dkt. No. 13, and a

reply brief by the plaintiff, on April 30, 2004, Dkt. No. 16, the matter is now

ripe for determination and has been referred to me for the issuance of a

report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and

Northern District of New York Local Rule 72.3(d).[7]  *See also* Fed. R. Civ.

P. 72(b).


III.   <u>DISCUSSION</u>

---

[6]     Some delay was occasioned by the agency's initial inability to locate its
file regarding the matter.  *See* Dkt. No. 5.

[7]     This matter has been treated in accordance with the procedures set forth
in General Order No. 18 (formerly, General Order No. 43) which was issued by the
Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998,
and amended and reissued by Chief District Judge Frederick J. Scullin, Jr. on
September 19, 2001.  Under that General Order an action such as this is considered
procedurally, once issue has been joined, as if cross-motions for judgment on the
pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure.

A.     Scope Of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal

v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F.

Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, her

decision should not be affirmed even though the ultimate conclusion

reached is arguably supported by substantial evidence.  *Martone*, 70 F.

Supp.2d at 148.  If, however, the correct legal standards have been

applied and the ALJ's findings are supported by substantial evidence,

those findings are conclusive, and the decision should withstand judicial

scrutiny regardless of whether the reviewing court might have reached a

contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586;

*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13

F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. §

405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of

-17-

42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Secretary of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

> B.   Disability Determination: The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.] "  42 U.S.C. §

423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.*

§§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so,

then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at

149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20

C.F.R. §§ 404.1520(d), 416.920(d).

　　　If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it

is determined that it does, then as a final matter the agency must examine

whether the claimant can do any other work.  *Id.* §§ 404.1520(f),

416.920(f).

　　　The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it

becomes incumbent upon the agency to prove that the claimant is capable

of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

　　　C.　　The Evidence In This Case

1.      RFC/Use of the Grid

Pivotal to the ALJ's finding of no disability is his determination that at the relevant times, plaintiff retained the RFC to perform a full range of light work.  Plaintiff maintains that this RFC finding is undermined by the evidence in the record, which reveals that he cannot meet the exertional requirements of light work, and additionally that his nonexertional limitations preclude him from performing a full range of light work, making the ALJ's resort to the grid inappropriate.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC finding is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F.Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess the person's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a.  Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered.

20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 §

200.00(e).  When making an RFC determination, an ALJ must specify

those functions which the claimant is capable of performing; conclusory

statements concerning his or her capabilities, however, will not suffice.

*Martone*, 70 F.Supp.2d at 150 (citing *Ferraris*, 728 F.2d at 587).  An

administrative RFC finding can withstand judicial scrutiny only if there is

substantial evidence in the record to support each requirement listed in

the regulations.  *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*,

737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp.

300, 309-10 (E.D.N.Y. 1997).

a.    <u>Exertional Limitations</u>

From an exertional point of view substantial evidence in the record

tends to support the ALJ's finding that prior to December 31, 1996, Rivera

was capable of performing the physical requirements of light work.  While

evidence of plaintiff's back condition extends back at least to the date of

his accident in 1992, the record does not disclose anything other than an

extremely conservative course of treatment with no particular intensity in

visits to health care providers during the relevant time frame.  Indeed, it

appears that plaintiff was able to ride a bike in June of 1996.  AT 748-49.

It was not until May of 1997, according to his testimony, that plaintiff was issued a wheelchair, and his testimony does not address the deterioration of his condition and to what extent his other physical ailments interfered with his ability to work prior to the critical date of the end of December, 1996.  AT 745-46.  Moreover, Rivera did not begin seeking more regular treatment from the VA hospital for his back pain until after expiration of his insured status.  *See*, *e.g.*, AT 483-85.

The medical evidence regarding plaintiff's physical condition generated during the relevant time period includes a consultative report of Dr. Pamela Pedersen, prepared on September 15, 1993, with largely unremarkable findings, *see* AT 227-29, and another consultative report from Dr. Ronult Bagner, performed on June 28, 1996, similarly unremarkable in diagnosing only cervical sprain/strain and lumbosacral strain, AT 476-78.  The reports of both Dr. Pederson and Dr. Bagner reflected that lumbar x-rays of the plaintiff were normal.  AT 174, 650, 477-78.  In addition, MRI testing completed on December 17, 1992 showed only "mild disc degeneration and L5-S1".  AT 497.

Although inexplicably it is nowhere mentioned in his decision, ALJ Ross's RFC determination finds considerable support from the RFC

-23-

assessment prepared by Dr. Anthony J. Armentano, a consultant, on

October 18, 1993.  AT 93-100.  Concededly, the record is somewhat

equivocal as to whether, in preparing that RFC determination, Dr.

Armentano actually examined the plaintiff.[8]  The report suggests,

however, that Dr. Armentano in all likelihood did examine the plaintiff,

since in the form he makes reference to "chest clear" and describes

plaintiff's "undiagnosed skin [disorder]."  *See* AT 94.  Whether or not Dr.

Armentano actually examined the plaintiff, his determination,

supplemented by the other medical evidence in the record, as reflected

above, can be said to provide substantial evidence supporting the ALJ's

light work finding.  *Gordils v. Secretary of Health & Human Servs.*, 921

F.2d 327, 328-29 (1st Cir. 1990) (ALJ's RFC assessment supported by

substantial evidence when ALJ relied on RFC report of non-examining

consulting physician and medical evidence in the record which supported

that report); *see also Lecler v. Barnhart*, No. 01 Civ. 8659, 2002 WL

31548600, at *6 (S.D.N.Y. Nov. 14, 2002) (holding that ALJ should have

---

[8]     Some courts have held that an ALJ may only rely upon RFC assessments completed by examining physicians.  *Morales Colon v. Commissioner of Soc. Sec.*, 245 F.Supp.2d 395 (D. P.R. 2003) (two RFC assessments from non-examining physicians were insufficient; ALJ should have obtained an RFC from an examining physician).

considered sole RFC assessment, which was completed by consultative physician, since it was the only evidence that spoke directly to plaintiff's lifting abilities).  According to Dr. Armentano, at that time Rivera retained the ability to lift twenty pounds occasionally and ten pounds frequently; to stand and/or walk, with normal breaks, for a total of about six hours in an eight hour work day; and to sit, again with normal breaks, for about six hours in an eight hour work day.  *Id.*

Unquestionably, at step five of the inquiry the burden of proof shifts to the Commissioner.  It does not necessarily follow, however, from the fact that the ALJ does not appear to have relied upon a formal RFC assessment in this case that the Commissioner has failed to meet that burden.  *E.g.*, *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (report from consultative examining physician adequate to support ALJ RFC finding; no requirement that there be specific, affirmative evidence as to each exertional requirement before ALJ can make finding); *Maldonado v. Sec. of HHS*, No. 92-1232, 1994 WL 684581, at *1-*2 (D. P.R. July 11, 1994) (affirming ALJ's conclusion that claimant was capable of sedentary work despite absence of formal RFC assessment when medical findings permitted "competent, common sense judgment").

To be sure, an ALJ is not qualified to interpret raw medical data within functional terms. *Perez v. Secretary of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991). An ALJ is not, however, precluded from rendering "common-sense judgments" about functional capacity when those decisions are based on medical findings; "[o]bviously, speaking hypothetically, if the only medical findings in the record suggested that a claimant exhibited little in the way of physical impairments, but nowhere in the record did any physician state in functional terms that the claimant had the exertional capacity to meet the requirements of sedentary work, the ALJ would be permitted to reach that functional conclusion himself." *Gordils*, 921 F.2d at 329.

In this instance the ALJ's RFC findings regarding Rivera's exertional limitations are supported by substantial evidence.

### b.   Nonexertional Limitations

Plaintiff further argues that even assuming his ability during the relevant time to perform a full range of light work, from an exertional standpoint, nonexertional limitations associated with the pain experienced by him, as well as those resulting from his asthma, a diagnosed mental condition and seizures, made resort to the grid inappropriate.

Ordinarily, the Commissioner can meet her burden in connection with the fifth step of the relevant disability test by utilizing the grid. *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). The grid takes into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether he or she can engage in substantial gainful work in the national economy. *Id.* Whether or not the grid should be applied in order to make a step five determination presents a case-specific inquiry which depends on the particular circumstances involved. *Bapp*, 802 F.2d at 605. If a plaintiff's situation fits well within a particular classification, then resort to the grid is appropriate. *Id.* If, on the other hand, nonexertional impairments, including pain, <u>significantly</u> limit the range of work permitted by exertional limitations, then use of the grid is inappropriate, in which case further evidence and/or testimony is required.[9] *Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 605-06.

---

[9] As one court has explained,

> [a] nonexertional limitation is one imposed by the claimant's impairments that affect [his or] her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain.

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. § 404.1569(a), (c)).

Unquestionably, the plaintiff suffers from an acknowledged mental condition which has been variously diagnosed over time.  As early as September 8, 1993, plaintiff was diagnosed by Dr. Baretz as suffering from an adjustment disorder with mixed emotional features.  AT 226. While Dr. Baretz characterized plaintiff's "personal, social and occupational functioning [as] impaired on a mild level only", and opined that he was able to perform some degree of work-related activity, his opinion clearly reflects at least some impairment in that regard.  *Id.* Plaintiff was later diagnosed on January 22, 1998 by William Hartwig, PhD, a staff psychologist and neuropsychologist with the VA, as suffering as PTSD - chronic.  AT 552-53.  In his report Dr. Hartwig noted that plaintiff "presents as lacking self-confidence and social skills, as well as extreme suspiciousness and distrust of others", and that plaintiff had reported to the examiner that he "resents demands placed on him which is often displayed as reacting to them in an unfriendly and irritable manner". *Id.*  Dr. Hartwig concluded that plaintiff "should be considered as a suicide risk."  AT 552-53 (emphasis omitted).

The ALJ's use of the grid also overlooks the evidence strongly suggestive of plaintiff's suffering from frontal lobe seizures.  The evidence

-28-

in the record reflects that plaintiff was awarded a 30% disability pension by the VA, and that he was seen early in his VA treatment by at least two separate physicians to address his episodes of blacking out.  AT 560-62, 575-76, 584.  In 1984, after undergoing psychological testing, plaintiff was noted as suffering from hysteria bordering on the psychotic.  *See* AT 572, 575-76.  Plaintiff reported that in 1997 he utilized a VA hospital, and later his home, as a refuge from the world, withdrawing from his family and installing electrical breakers in his room which he could shut down.  AT 508.

Evidence of plaintiff's treatment at the Cornwall Hospital for an overdose of pills in 1997 confirms the earlier discerned risk of suicide.  AT 534-49.  At that time an Axis I diagnosis of major depression with an Axis III diagnosis of seizure disorder, asthma, and back injury, was recorded. AT 537.  Plaintiff was also given a general assessment of functioning ("GAF") score of 60/50, reflecting a serious impairment in social and occupational functioning over the prior year.[10]  AT 537.

---

[10]    The Global Assessment of Functioning ("GAF") scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health.  Diagnostic and Statistical Manual of Mental Disorders 34 (American Psychiatric Association, 4th Ed. Text Revision 2000) ("DSM-IV-TR").  A GAF score of between 50 and 60 indicates the existence of moderate mental health symptoms or moderate difficulties in social, occupational or school functioning.  *Id.*

Plaintiff's asthma also presents further nonexertional limitation counseling against use of the grid.  The record is replete with reference to plaintiff's suffering of asthma and having received treatment for that condition.  *See*, *e.g.*, AT 351, 490, 631.  On February 27, 1992, Dr. Das, of the VA, noted that the plaintiff should avoid dust, which could trigger asthmatic episodes.  AT 631.  This restriction was reiterated by Dr. Sim in his December 30, 1997 assessment.  *See* AT 490.  The need to avoid exposure to dust, gases, and fumes precludes the use of the grid by the Commissioner in order to carry her burden at step five of the sequential evaluation.  *Crudele v. Chater*, No. 92 CIV. 7912, 1997 WL 198076, at *4 (S.D.N.Y. Apr. 23, 1997) (citing Social Security Ruling ("SSR") 85-15).

As was previously noted, in the "ordinary case", the Commissioner may meet her burden at step five of the sequential evaluation by resort to the grid.  *Rosa*, 168 F.3d at 78.  When, however, nonexertional limitations sufficiently undermine the claimant's ability to perform the full range of work specified from an exertional point of view, the Commissioner cannot rely upon the grid, but instead must solicit vocational testimony in order to determine whether, based upon the combination of exertional and nonexertional impairments established, there exist in the national

-30-

economy sufficient jobs which the claimant is capable of performing.

*Bapp*, 802 F.2d at 605-06.  The ALJ's failure to elicit such testimony in this

case warrants reversal.

>            2.   Pain/Credibility Assessment

The ALJ's determination in this case is based, in part, upon his

rejection of plaintiff's subjective complaints of pain.  While plaintiff, who

has been diagnosed as having a back condition, based upon clinical

evidence and his subjective claims, presented at the hearing in a

wheelchair, indicating that he can ambulate only modestly through use of

the wheelchair or a cane, the ALJ rejected those complaints as not

credible based only upon the lack of evidence of muscle atrophy or

significant motor, sensory or reflex deficits present as well as the lack of

treatment until October of 1997.

An ALJ must take into account subjective complaints of pain in

making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d),

416.929(a), (d).  When examining the issue of pain, however, the ALJ is

not required to blindly accept the subjective testimony of a claimant.

*Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*).

Rather, an ALJ retains the discretion to evaluate a claimant's subjective

testimony, including testimony concerning pain.  *See Mimms v. Heckler*,

750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that

discretion the ALJ must consider a variety of factors which ordinarily

would be relevant on the issue of credibility in any context, including the

claimant's credibility, his or her motivation, and the medical evidence in

the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL

59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.)

(citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an

independent judgment concerning the actual extent of pain suffered and

its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective

clinical evidence demonstrating that claimant has a medical impairment

which one could reasonably anticipate would produce such pain, it is

entitled to considerable weight.[11]  *Barnett*, 13 F. Supp.2d at 316; *see also*

20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony

concerning the intensity, persistence or functional limitations associated

with his or her pain is not fully supported by clinical evidence, however,

---

[11]  In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp.2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Secretary, Dept. of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984).

It appears likely, as he asserts, that Rivera does suffer from some degree of discomfort as a result of his physical conditions.  The fact that he suffers from discomfort, to be sure, does not automatically qualify him as disabled, since "disability requires more than mere inability to work without pain."  *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

The ALJ's determination rejecting plaintiff's subjective pain complaints is not compliant with the applicable regulations, in that it does not take into consideration all of the matters addressed in the regulations.  During the hearing, Rivera testified that he is unable to work as a result of his anxiety and depression.  AT 746.  Plaintiff also noted that his seizure disorder prevents him from working because it causes him to pass out.  AT 747-48.  Plaintiff further testified to experiencing severe back and leg pain resulting in a burning sensation and the feeling that he has been stabbed.  AT 750-51.  As a result of the pain Rivera is unable to sit for more than one to one and one-half hours at a time, and utilizes both a wheel chair and a cane to ambulate.  AT 753-55.  Addressing these complaints in a brief paragraph, ALJ Ross found them not be credible based upon the lack of evidence, through December 31, 1996, of a clinical condition which would support a finding of severe, debilitating pain.  AT

-34-

31.  No analysis was made of plaintiff's daily activities, the medications

being taken and their side effects, measures taken by the plaintiff to

alleviate the pain, and other relevant factors required to be considered,

*inter alia*, under Social Security Ruling ("SSR") 96-7p.  The ALJ's

improperly explained, and unsupported, rejection of plaintiff's subjective

pain complaints provides an additional basis for reversal of the

Commissioner's determination in this matter.

### 3.    Opinions of Doctors Hartwig and Sim as Retrospective Diagnoses

In support of his request for reversal as well as a directed finding of

disability, plaintiff offers the opinions of Dr. Hartwig, rendered on January

22, 1998, and Dr. Sim, dated December 30, 1997.  While acknowledging

that those opinions were rendered well after the end of the relevant time

period, plaintiff contends that they are retrospective opinions which bear

upon his condition during the relevant time period and should therefore

have been considered.

A treating physician's retrospective diagnosis and opinion are

entitled to controlling weight unless they are contradicted by other medical

evidence or "overwhelmingly compelling" non-medical evidence.  *Rivera v.*

*Sullivan*, 923 F.2d 964, 968 (2d Cir.1991);  *Wagner v. Secretary of HHS*,

906 F.2d 856, 862 (2d Cir.1990).  The Second Circuit has explained that

> [a] diagnosis of a claimant's condition may properly be made
> even several years after the actual onset of the impairment.
> Such a diagnosis must be evaluated in terms of whether it is
> predicated upon a medically accepted clinical diagnostic
> technique and whether considered in light of the entire record,
> it establishes the existence of a physical impairment prior to
> [the relevant time.]

*Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981) (internal quotation

marks and citation omitted).

Consideration of the disputed reports as retrospective opinions

bearing on the claimant's condition prior to the end of December 1996 is

problematic.  Neither of those reports purports to address plaintiff's

condition during that time period.  Dr. Sim states that his assessment is

based upon treatment rendered between October 27, 1997 and December

30, 1997.  AT 486.  Similarly, the report of Dr. Hartwig is expressly based

upon a "recently completed" MMPI-I test.  AT 552.  In my view, neither of

these documents is on its face a sufficiently reliable indicator of plaintiff's

condition prior to December 31, 1996 to be properly considered as a

retrospective opinion which could undermine the validity of the ALJ's

determination.

D.    Reopening of Prior Application

Plaintiff contends that his earlier application should have been reopened based upon the reports of Drs. Sim and Hartwig, which he regards as new and material.

As the Commissioner argues, because the plaintiff failed to challenge the denial of benefits based upon his earlier application by seeking a hearing, this court is powerless to review an ALJ's decision not to reopen an earlier determination, since it is not considered to be a "final decision" for purposes of section 405(g). *Byam v. Barnhart*, 336 F.3d 172, 180 (2d Cir. 2003). "As a general rule federal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits." *Id.* at 179 (citation omitted). In any event, even were the court empowered to order that relief, I would not recommend that it do so in this instance since, for reasons previously articulated, neither of the reports cited by plaintiff in support of his request is both new and material to plaintiff's condition at the relevant times. Accordingly, I recommend denial of plaintiff's request for an order directing that his earlier application for benefits be reopened.

E.    Scope of Remand

In his appeal, plaintiff requests that the Commissioner's

-37-

determination be reversed and the matter remanded to the agency with a directed finding of disability.

As was noted by the Second Circuit,

[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see also Sarchet v. Chater*, 78 F.3d 305, 307 (2d Cir. 1996) ("we cannot uphold a decision . . . if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result").  Conversely, if application of the correct legal standard can only "lead inexorably to a single conclusion," remand is unnecessary.  *Johnson*, 817 F.2d at 986.

Because the record now before the court does not firmly disclose the existence of a disability prior to December 31, 1996, but instead is, at best, equivocal on that score, I recommend that the court not direct a finding of disability, but instead remand the motion to the Commissioner for further proceedings including to adduce testimony of a vocational expert and, if deemed appropriate, to order further consultative

-38-

examinations of the plaintiff and his records in order to ascertain plaintiff's condition, including any exertional and nonexertional limitations extant at the relevant times.

IV.    SUMMARY AND RECOMMENDATION

At issue in this case is plaintiff's condition prior to December 31, 1996.  Because the ALJ in this case found plaintiff incapable of performing his past relevant work, the burden passed to the Commissioner to determine, at step five of the relevant sequential inquiry, whether other jobs which plaintiff is capable of performing exist in the national economy. Because the record is vague regarding plaintiff's condition prior to December 31, 1996, the ALJ should have analyzed those complaints in more detail and explained the reason for his rejection of his claim of disability, consonant with the applicable regulations.  To the extent that plaintiff seeks a directive that his earlier application for benefits be reopened, and that the reports of Drs. Sim and Hartwig be considered as retrospective opinions bearing upon plaintiff's condition prior to December 31, 1996, I recommend that those requests be rejected.  Finally, in accordance with the foregoing, I recommend that the matter be remanded to the Commissioner, without a directed finding of disability, for further

appropriate proceedings which may include testimony from a vocational

expert as well as additional consultative reports to address plaintiff's

condition at the relevant times.

Based upon the foregoing it is hereby

RECOMMENDED that plaintiff's motion for judgment on the

pleadings be GRANTED, the Commissioner's finding of no disability

VACATED, and the matter REMANDED to the agency for further

consideration consistent with this report.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court within ten (10) days.  FAILURE TO SO

OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*,

984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy

of this Report and Recommendation upon the parties by regular mail.

Dated:      November 10, 2005
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge